## FORD v. HUFF.

(Circuit Court of Appeals, Fifth Circuit. January 17, 1924. Rehearing Denied March 18, 1924.)

### No. 4144.

1. **Removal of causes ⚖➔118—Amendment of pleading held permissible after removal before issues settled.**

Under Judicial Code, § 274a (Comp. St. § 1251a), and Rev. St. § 954 (Comp. St. § 1591), it was permissible to allow a proper amendment of the pleadings after a case was removed to the federal court and before the issues had been settled.

2. **Pleading ⚖➔367(5)—Denial of leave to file equitable plea held to preclude amendment to make allegations thereof more definite and certain.**

After a denial of leave to file an equitable plea on removal to a federal court in an action at law on the ground that it did not contain any

equitable defense, the plea was not subject to amendment to make its allegations more definite and certain, since the rejection of the plea put it out of the case.

**3. Patents ⬤⟿219(3)—Inventor held estopped by laches from asserting claim to royalties against employer.**

Where the inventor of certain appliances invented while in defendant's employ acquiesced in the payment to him of $10,000 additional compensation as a reward, and for 4 years while employed by defendant and for 10 years thereafter, though knowing of the use made of the appliances by the automobile company, of which defendant was officer, director, and large stockholder, made no claim to royalties, and defendant, relying on such conduct, permitted the company to have the invention without compensation, so that the enforcement of the claim to royalties would be a total loss to defendant which he could have avoided if the claim had been made with reasonable promptness, *held*, that inventor was barred by estoppel and laches from enforcing his claim to royalties.

**4. Estoppel ⬤⟿99—Effect of estoppel to enforce claim stated.**

The effect of one being estopped to enforce a claim is that his plight is substantially the same as it would have been if the claim had never existed.

**5. Action ⬤⟿24—Equity ⬤⟿84—Employer sued by former employé for royalties entitled to plead estoppel and laches; "equitable defense."**

Under Judicial Code, § 274b (Comp. St. § 1251b), permitting equitable defenses to actions at law, an employer sued by a former employé for royalties on an invention *held* entitled to plead facts showing laches and estoppel; an "equitable defense" including a state of facts which, by virtue of doctrines recognized by courts of equity alone, has the effect of barring or rendering unenforceable against defendant the claim asserted by plaintiff therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equitable Defenses.]

Appeal from the District Court of the United States for the Southern District of Florida; Henry D. Clayton, Judge.

Action by Edward S. Huff against Henry Ford. From a judgment denying his motion for leave to withdraw pleas and for leave to file an equitable plea (289 Fed. 858), defendant appeals. Reversed.

W. E. Kay and Thos. B. Adams, both of Jacksonville, Fla., Frank B. Shutts and Crate D. Bowen, both of Miami, Fla., and Reuben Ragland, of Jacksonville, Fla. (Kay, Adams & Ragland, of Jacksonville, Fla., Shutts & Bowen, of Miami, Fla., and H. H. Emmons and C. B. Longley, both of Detroit, Mich., on the brief), for appellant.

James M. Carson, and John M. Murrell. both of Miami, Fla., and George T. Farrell and T. T. Ansberry, both of Washington, D. C. (T. T. Ansberry and George T. Farrell, both of Washington, D. C., and James M. Carson, John M. Murrell, and Thomas B. Norfleet, all of Miami, Fla., on the brief), for appellee.

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

WALKER, Circuit Judge. This suit was brought by the appellee against the appellant in a Florida state court in March, 1922. The parties are herein referred to as plaintiff and defendant, respectively. The declaration contained seven counts, each claiming the sum of $11,-

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

000,000. All the counts except the seventh were common counts. The seventh count contained averments to the following effect:

For several years prior to January, 1908, plaintiff was employed by defendant as an electrical and mechanical engineer, defendant being engaged in the manufacture of certain automobiles, commonly known as Ford automobiles. On January 5, 1908, plaintiff agreed with defendant to invent a magneto for defendant that would work on the flywheel of an automobile, for and in consideration of defendant agreeing that upon the inventing by the plaintiff of such a magneto defendant would pay plaintiff a reasonable amount as a royalty on each of the magnetos so invented and used by the defendant in the construction and manufacture of such automobiles. Plaintiff thereafter invented such a magneto, and on March 2, 1908, made application to the United States Patent Office for a patent for said invention. In pursuance of that application a patent, No. 1,066,729, was issued on July 8, 1913, to defendant as assignee of plaintiff. Pursuant to the same agreement plaintiff invented a new and useful improvement in flywheel magnetos, for a patent for which appliction was made on April 27, 1908. On that application a patent, No. 1,098,361, was issued on May 26, 1914, to defendant as assignee of plaintiff. Defendant accepted the two inventions mentioned, and did use and cause to be used and is now using and causing to be used the magneto and improvement in flywheel magnetos, so invented in the manufacture of automobiles known as model T Ford automobiles, of tractors known as Fordson tractors, and of trucks known as Ford trucks. Defendant has refused to keep and perform said agreement on his part, though repeatedly requested to do so, except that defendant did pay to plaintiff the sum of $10,000, which was agreed to be paid upon the manufacturing and using by defendant of the first 20,000 magnetos and improvements thereto which had been invented by plaintiff. A reasonable royalty for the use of said inventions is $2.50 upon each magneto and improvement thereto. After the removal of the suit to the court below, and before the issues had been settled, the defendant moved the court for leave to withdraw the pleas theretofore filed, and to file in the cause an equitable plea, which is set out at length in the opinion rendered by the District Judge. Huff v. Ford, 289 Fed. 858. Defendant's motion for leave to file that plea was overruled and denied, the court adjudging that that plea does not contain any equitable defense. The defendant complains of that action of the court.

[1, 2] It was permissible to allow a proper amendment of the pleadings at the time leave to file the plea mentioned was sought. R. S. § 954 (Comp. St. § 1591); Judicial Code, § 274a (Comp. St. § 1251a). A result of the denial of leave to file the plea on the ground that it does not contain any equitable defense was that thereafter it was not subject to be amended by making its allegations more definite or certain, if it was desired so to amend it, as the rejection of the plea put it out of the case.

[3] That plea contained averments to the following effect:

The plaintiff's alleged causes of action set forth in the common counts are none other than he has attempted to set forth in the seventh count. For a long period prior to January, 1908, and at all times

subsequent thereto, defendant was an officer, director, and large stockholder in the Ford Motor Company, a corporation, which was then and still is engaged in the manufacture of Ford automobiles and accessories, and then had and still has a plant in Detroit, Mich., where such automobiles and accessories were and still are being manufactured. Defendant individually has never manufactured automobiles or magnetos. Prior to January, 1908, defendant had conceived the idea and believed that a principle long before discovered and known to him could be applied by devising a flywheel magneto. Plaintiff, being employed generally by defendant as a mechanic and electrician, was directed by defendant, if possible, to devise an application of said principle for a flywheel magneto. Thereupon plaintiff applied himself to the task so assigned to him, and for his services in that behalf, as throughout the course of his employment, was paid and received and accepted a regular weekly compensation. During the course of plaintiff's employment needed material and equipment for models, experiments, and tests in plaintiff's efforts to work out said problem were supplied to plaintiff without expense to him. For like purpose plaintiff was likewise supplied with the services and aid of other engineers and mechanics and assistants. When defendant directed plaintiff to the solution of said problem defendant imparted to plaintiff all of defendant's knowledge concerning said principle, and constantly, during the course of plaintiff's said employment, personally aided plaintiff with defendant's ideas and suggestions for the accomplishment of the purpose in hand. None of the expenses for the patents for a flywheel magneto and an improvement thereupon, both devised with the aid of defendant, and defendant's engineers, mechanics, and assistants, was borne by plaintiff. Defendant, wishing to reward plaintiff for his success in the task so assigned to him, provided that plaintiff should receive as such reward the sum of $10,000, payable in installments. Thereafter installments of said reward were paid and received by plaintiff, said installments covering a period of years until February, 1912, at which time plaintiff voluntarily left the employ of the Ford Motor Company and the final payment of said reward was made.

Neither at the time of said final payment nor prior thereto did plaintiff make any claim or demand whatever, either upon defendant or the Ford Motor Company, for any compensation, remuneration, or reward by way of royalty or otherwise other than the balance of the sum of $10,000 provided for by defendant as aforesaid. At the time of said final payment defendant, as well as the Ford Motor Company, understood that all obligations of defendant to plaintiff in respect to compensation and remuneration were completely satisfied and discharged, and plaintiff did not then or theretofore claim to the contrary. During the period from 1908 to the date of said final payment plaintiff resided in Detroit and was employed by the Ford Motor Company in performing various services assigned to him in or about the development and production of model T Ford cars, in which were installed said flywheel magnetos. Plaintiff well knew when the Ford Motor Company began using said magnetos in model T Ford cars and/or engines in the fall of 1908, that during said period the Ford Motor Company was manufacturing and using said magnetos by permission of the defendant in

rapidly increasing quantities, and that at the time of said final payment said Ford Motor Company had manufactured or used in building model T Ford cars and/or engines at least 100,000 of said magnetos. Plaintiff continued to reside in and about Detroit until the latter part of 1917 or early part of 1918, when he removed to Miami, Fla. During the time he continued to reside in Detroit he knew of the rapidly increasing manufacture and utilization by the Ford Motor Company of said magnetos. During the period of plaintiff's further residence in and about Detroit he made no claim or demand of any nature whatsoever upon defendant or the Ford Motor Company, and since said final payment up to the time of the institution of this suit plaintiff never advised defendant of the nature or amount of any claim or demand whatsoever.

During the entire period from 1908 to the present time defendant has permitted the Ford Motor Company to manufacture and use said magnetos without demanding, requesting, requiring, or expecting any compensation for such use of said magnetos by way of royalty or otherwise. During that period the Ford Motor Company has manufactured and used a large number of said magnetos, and has regularly paid dividends in which defendant has shared pro rata with other stockholders. If plaintiff's claim or any part thereof were now allowed, and judgment therefor awarded against defendant, the amount of such judgment would be a total loss to the defendant, with no means or right to recoup or recover any part thereof against or from the Ford Motor Company or from others who were then stockholders of said company, whose stock defendant during the year 1919 purchased without knowledge of plaintiff's claim, a part of that stock so purchased being afterwards transferred by defendant to other persons, who likewise had no knowledge of plaintiff's claim. Had plaintiff seasonably apprised defendant by suit or otherwise of the claim made by this suit defendant could and would have defended the same, and shown it to be groundless, and would have seasonably made such contract with the Ford Motor Company for the use of said magnetos as would have provided for indemnity against plaintiff's alleged claim, or would have caused the substitution and use by the Ford Motor Company of some other ignition device, or would otherwise have protected himself from loss which would now result from the recovery by plaintiff in the suit of a judgment for any sum whatever. A large number of persons who were employed by defendant and/or by the Ford Motor Company during the period when the transaction out of which plaintiff's alleged claim arises, and who were familiar with material parts of that transaction, have now passed out of such employ and are not available as witnesses in defendant's behalf. The recollections of others who knew of said transaction, through lapse of time, have grown dim and indistinct. Material documents and data have been lost or mislaid. In many divers ways defendant is hampered and embarrassed in now making his defense against plaintiff's alleged claim, although such defense could have readily and effectively been made at any seasonable time subsequent to January, 1908.

The averments of the plea disclose the circumstances under which plaintiff rendered the service alleged in his declaration. They show

that he was compensated for that service, that he acquiesced in the action of defendant in providing for the payment in installments of an additional amount as a reward for success, and that he demanded and accepted the balance of such amount under circumstances calculated to lead defendant to believe or understand that such payment was accepted by plaintiff in full satisfaction and discharge of all claims by him based on the rendition of such service, with the result of defendant's conduct being influenced to his detriment by a reliance on such belief or understanding. The averments of the plea show that during the period from the fall of 1908 until February, 1912, while plaintiff was in the employ of the defendant and/or the Ford Motor Company, and during the succeeding 10 years, plaintiff was aware of conditions which, under the agreement alleged in his declaration, entitled him to steadily increasing royalties for the use of the inventions mentioned, but that, instead of his making any claim based on such alleged agreement, plaintiff acquiesced in conduct of the defendant which disclosed that the latter understood that a compliance with plaintiff's demand for the payment of the balance of the reward provided for by defendant had the effect of a final settlement of all obligations, legal or moral, based on the service rendered by the plaintiff. The plea further shows that defendant, during the long period from the fall of 1908 to the date of the bringing of this suit in 1922, relying on the belief or understanding, induced or influenced by plaintiff's conduct, that nothing was due or payable to plaintiff as royalties for the use of the inventions mentioned, permitted the Ford Motor Company and its stockholders other than defendant to have the benefit of the use without compensation of such inventions, with the result that the enforcement now of the claim asserted by plaintiff would entail upon defendant a total loss which he could and would have avoided in whole or in part if plaintiff had made that claim with reasonable promptness.

[4] It would not be consistent with equity and good conscience for plaintiff to enforce the claim asserted by this suit after he, with knowledge of the facts and under conditions inviting the assertion of that claim if it was relied on, acquiesced in defendant treating that claim as nonexistent; after he demanded and accepted payment of the balance of the reward mentioned as a final settlement of all claims based on the services rendered, and theretofore and thereafter for many years refrained from making the claim now asserted, while defendant, in reliance on the belief and understanding, induced by plaintiff's conduct, that such claim never existed or had been abandoned, was changing his position in such a way that he will be injured if plaintiff now is permitted to enforce his claim. Under equitable principles applicable to the state of facts alleged in the plea plaintiff has, by estoppel and laches, lost the right to enforce the claim asserted by him. Simmons v. Burlington, etc., R. Co., 159 U. S. 278, 291, 16 Sup. Ct. 1, 40 L. Ed. 150; Washington v. Opie, 145 U. S. 214, 12 Sup. Ct. 822; Ward v. Sherman, 192 U. S. 168, 176, 24 Sup. Ct. 227, 48 L. Ed. 391; Moran v. Horsky, 178 U. S. 205, 20 Sup. Ct. 856, 44 L. Ed. 1038; 10 R. C. L. 694. The effect of one being estopped to enforce a claim is that his plight is substantially the same as it would have been if the claim had never existed.

[5] Under amended section 274b of the Judicial Code (38 Stat. 956 [Comp. St. § 1251b]), a defendant in an action at law who files a plea setting up an equitable defense is given the same rights as if he had set them up in a bill in equity. Liberty Oil Co. v. Condon National Bank, 260 U. S. 235, 43 Sup. Ct. 118, 67 L. Ed. 232. We are of opinion that a bill in equity disclosing the state of facts alleged in the plea in question would show that defendant was entitled to prevent the enforcement of the claim asserted by this suit on the ground that plaintiff's conduct had been such as to deprive him of the right to enforce that claim. The term "equitable defenses," within the meaning of section 274b of the Judicial Code, includes a state of facts which, by virtue of doctrines recognized by courts of equity alone, has the effect of barring, or rendering unenforceable against a defendant in a suit, the claim asserted by the plaintiff therein.

We conclude that the averments of the plea in question showed the existence of an equitable defense to the suit brought by plaintiff, and that the court erred in the above-mentioned ruling. This conclusion dispenses with the necessity of considering features of the plea which have not been specifically referred to.

Because of the above-mentioned error the judgment or decree appealed from is reversed.