HUGHES, Circuit Judge,
eoneurring-in-part, dissenting-in-part, with whom MOORE, WALLACH, TARANTO, and CHEN, Circuit Judges, join.
Patent law is governed by the same common-law principles, methods of statutory interpretation, and procedural rules as other areas of civil litigation. Today, the majority adopts a patent-specific approach to the equitable doctrine of laches. In doing so, the majority overlooks Congress’ intent and Supreme Court precedent, which demonstrate that laches is no defense to a claim for damages filed within the statutory limitations period established by 35 U.S.C. § 286.
In Petrella v. Metro-Goldwyn-Mayer, Inc., — U.S. -, 134 S.Ct. 1962, 1974, 188 L.Ed.2d 979 (2014), the Supreme Court emphasized that it had never approved the use of laches to bar a claim for legal damages brought within a statutory limitations period. The majority reasons that Petrella is not controlling here because Congress specifically incorporated laches as a defense to legal damages into the Patent Act of 1952. But the majority has no sound basis for finding that Congress intended to displace the uniform limitations period in § 286 with the case-specific doctrine of laches. The majority’s key logic — that Congress adopted the view of some lower courts that laches could bar legal relief in patent cases — requires us to presume that Congress ignored the Supreme Court. For in 1952, the Supreme Court had already recognized the common-law principle that laches cannot bar a claim for legal damages. I know of no precedent for inferring a congressional departure from a common-law principle recognized by the highest court based solely on aberrational lower-court decisions.
The Supreme Court has repeatedly cautioned this court not to create special rules for patent cases. In light of the Supreme Court’s clear, consistent, and longstanding position on the unavailability of laches to bar damages claims filed within a statutory limitations period, we should not do so here. I respectfully dissent-in-part.[1]
*1334 I
The Supreme Court in Petrella held that when Congress enacts a statutory limitations period, courts cannot invoke the equitable doctrine of laches to bar claims for legal relief filed within that period. 134 S.Ct. at 1967. The Supreme Court reasoned that a statutory limitations period expresses Congress’ judgment on the timeliness of a claim. Id. Because the statutory limitations period “itself takes account of delay,” courts cannot further regulate the timeliness of a claim using the doctrine of laches. Id. at 1973. The Supreme Court found that the conflict between these two delay-based limitations creates a separation of powers problem, and concluded that “courts are not at liberty to jettison Congress’ judgment on the timeliness of suit.” Id. at 1967.
The Supreme Court further explained that “laches is a defense developed by courts of equity; its principal application was, and remains, to claims of an equitable cast for which the Legislature has provided no fixed time limitation.” Id. at 1973 (citing 1 D. Dobbs, Law of Remedies § 2.4(4), p. 104 (2d ed.1993)). This principle has a strong historical pedigree: “[b]oth before and after the merger of law and equity in 1938, [the Supreme Court] has cautioned against invoking laches to bar legal relief.” Id. at 1973. The Supreme Court cited several of its decisions as proof, including two cases decided prior to 1952. See id. (citing Holmberg v. Armbrecht, 327 U.S. 392, 395, 396, 66 S.Ct. 582, 90 L.Ed. 743 (1946); United States v. Mack, 295 U.S. 480, 489, 55 S.Ct. 813, 79 L.Ed. 1559 (1935)). Although some regional-circuit cases have departed from this principle, the Supreme Court found “no case in which [the Supreme Court] has approved the application of laches to bar a claim for damages brought within the time allowed by a federal statute of limitations.” Id. at 1974.
Like the statute of limitations considered in Petrella, the statutory limitations period in § 286 of the Patent Act expresses Congress’ judgment on the timeliness of claims for damages. See 35 U.S.C. § 286. Section 286 prohibits recovery of damages when a claim is filed more than six years after the associated patent infringement occurs, but allows recovery of damages when a claim is filed within that six-year window. Cf. Petrella, 134 S.Ct. at 1973 (observing that under the Copyright Act’s statute of limitations, “a successful plaintiff can. gain retrospective relief only three years back from the time of suit”). I agree with the majority that, with respect to claims for damages and the conflict with laches, there is no functional difference between § 286 and a statute of limitations. See Maj. Op., at 1321-22. The Supreme Court’s decision in Petrella, therefore, strongly suggests that laches is not available to further regulate the timeliness of damages claims in patent-infringement cases.
To overcome this conclusion, we would have to find compelling evidence that Congress incorporated laches into the Patent Act as an additional time-bar on claims for legal damages. The Supreme Court has required clear evidence to justify inferring a congressional departure from traditional common-law principles, such as the principle recognized in Petrella that laches does not apply to claims for legal relief. See, e.g., Nken v. Holder, 556 U.S. 418, 433, 129 *1335 S.Ct. 1749, 173 L.Ed.2d 550 (2009) (applying the “presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident”); Weinberger v. Romero-Barcelo, 456 U.S. 305, 320, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982) (“[A] major departure from the long tradition of equity practice should not be lightly implied.”). Additionally, the Supreme Court has made abundantly clear that there must be a particular justification in the statute before this court may announce special rules for patent cases that depart from the rules for other areas of civil litigation. See, e.g., Teva Pharm. USA, Inc. v. Sandoz, Inc., — U.S. -, 135 S.Ct. 831, 836-40, — L.Ed.2d - (2015); Octane Fitness, LLC v. ICON Health & Fitness, Inc., — U.S. -, 134 S.Ct. 1749, 1758, 188 L.Ed.2d 816 (2014); eBay Inc. v. MercExchange, LLC, 547 U.S. 388, 391, 126 S.Ct. 1837, 164 L.Ed.2d 641 (2006).
II
The majority brushes aside the teachings of Petrella and finds based on vague legislative history and muddled case law that Congress intended to depart from the common-law principle that laches only bars equitable relief where a statutory limitations period applies. See Maj. Op. at 1321-30. Two flaws pervade the majority’s analysis. First, the majority interprets 35 U.S.C. § 282 in isolation, without' regard to Congress’ intent expressed in § 286. Second, in addition to misreading the pre-1952 cases it cites, the majority limits the scope of its review to favorable patent cases. The majority ignores Supreme Court precedent and other federal court decisions holding that laches does not bar claims for legal relief filed within a statutory limitations period. Properly analyzed, we cannot reasonably infer from the Patent Act that Congress intended to depart from this common-law principle.
A
The majority finds that Congress incorporated laches into § 282 because Congress chose to use broad language in that section; and because an executive-branch official said so. See Maj. Op. at 1321-23. Although the majority does not identify which particular term encompasses a defense of laches, the only possible candidates are “[n]on-infringement, absence of liability for infringement or unenforceability.” 35 U.S.C. § 282(b)(1). The remaining subsections refer specifically to other provisions of the Patent Act, none of which allude to laches. See id. at (b)(2)-(4). First Quality and several amici argue that laches falls within the term “unenforceability” in particular.
The language in § 282(b)(1) is ambiguous at best, and contains no hint of a special version of laches that applies to legal relief within a statutory limitations period. The terms “absence of liability” and “unenforceability” do not precisely refer to any particular defenses to patent-infringement suits. Although the plain meaning of these terms does not conclusively rule out the defense of laches, it does not necessarily include a defense of laches either. The majority seems to think that the indeterminate breadth of these terms helps its case, making it more likely that laches falls somewhere within their scope, whatever that may be. See Maj. Op. at 1321-22. But statutory interpretation cannot turn on this kind of guesswork. And even if laches were implicit in § 282, that would not be enough, for the question is whether Congress prescribed a variant form of laches in the Patent Act that applies to claims for legal relief.
The majority disregards an important tool of statutory interpretation that shows *1336 Congress did not adopt such a defense. It is a “fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” King v. Burwell, — U.S. -, 135 S.Ct. 2480, 2492, 192 L.Ed.2d 483 (2015) (quoting Utility Air Regulatory Grp. v. Envtl. Prot. Agency, — U.S. -, 134 S.Ct. 2427, 2441, 189 L.Ed.2d 372 (2014)) (internal quotation marks omitted); see also La. Pub. Serv. Comm’n v. Fed. Commc’n Comm’n, 476 U.S. 355, 370, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) (noting the “familiar rule of construction that, where possible, provisions of a statute should be read so as not to create a conflict”). Here, the statutory limitations period in § 286 informs the scope of § 282. Section 286 expresses Congress’ judgment on the timeliness of damages claims: a patent owner may recover damages when a claim is filed within six years of infringement, but no later. If § 282 includes a defense of laches that applies to claims for damages, it would conflict with this judgment. Laches could bar a patent owner from recovering damages even though its claim was filed within the clearly defined six-year period established by § 286. The extent of this conflict is highlighted by the Supreme Court’s reasoning in Petrella. Notwithstanding the additional elements of laches beyond mere delay, the Supreme Court held that laches and the statute of limitations were in such conflict that applying laches created a separation of powers problem. See Petrella, 134 S.Ct. at 1967, 1973. Congress’ decision to create a fixed statutory limitations period in § 286 therefore strongly suggests that it did not intend to codify a defense of laches that further regulates the timeliness of damages claims.
The legislative history of § 286 further proves the point. Between 1874 and 1897, the federal patent statute did not contain a limitations period of any kind. See Campbell v. Haverhill, 155 U.S. 610, 613-14, 15 S.Ct. 217, 39 L.Ed. 280 (1895). Federal courts therefore relied on analogous state statutes of limitations to determine the timeliness of claims. See id. at 618, 620, 15 S.Ct. 217. Congress found this approach problematic, and in 1897 enacted the predecessor to § 286 to “create a uniform statute of limitations.” H.R.Rep. No. 54-940, at 2 (1896); see Rev. Stat. § 4921 (1897).[2] If we read § 282 to incorporate the flexible, case-specific doctrine of laches as to legal damages, that section .would “tug against the uniformity Congress sought to achieve.” Petrella, 134 S.Ct. at 1975 (noting a similar conflict with the statute of limitations in the Copyright Act). Thus, to be consistent with the purpose of § 286, we cannot interpret § 282 to incorporate a defense of laches that bars legal relief otherwise permitted under § 286.
The House and Senate Reports from 1952 also contradict the majority’s interpretation. Both sources explain that § 282 restates statutory defenses “in general terms, changing the language in the present statute, but not materially changing the substance.” H.R. Rep. 82-1923 at 10 (1952); S. Rep. 82-1979 at 9 (1952). This declaration shows that Congress intended to preserve what the language of *1337 the pre-1952 statutes fairly conveys. And nothing in the pre-1952 statutes suggests an authorization of laches as a bar to legal damages requested within a limitations period. The pre-1952 provision enumerating defenses applicable to an infringement suit, whether for legal or equitable relief, does not refer directly or indirectly to laches. See 35 U.S.C. § 69 (1946) (codifying Rev. Stat. § 4920 as amended). The provision authorizing remedies refers to “the course and principles of courts of equity” (which includes laches) in the portion addressing injunctions, but does not mention equitable defenses in the portion addressing damages. 35 U.S.C. § 70 (1946) (codifying Rev. Stat. § 4921 as amended). In the absence of any prior statutory authorization of laches as a bar to legal damages, the majority relies on pre-1952 “common law.” But nothing in the legislative history reflects congressional recognition of any pre-1952 case law on the subject of laches, let alone approval of such case law as went beyond what the pre-1952 statutes authorized on their face. The key 1952 legislative history on § 282 thus runs counter to the majority’s conclusion that Congress intended this section to incorporate laches as defense to legal damages.
The majority’s only evidence that Congress intended to incorporate a defense of laches at all in § 282 is a lone statement in P.J. Federico’s Commentary on the New Patent Act. But Mr. Federico’s reference to “laches” does not suggest that Congress incorporated a distinctive version of laches that, contrary to its traditional role at common law, bars a claim for legal damages filed within a statutory limitations period. This statement therefore cannot support the majority’s conclusion. Indeed, the only interpretation of this statement that is consistent with § 286 is that Mr. Federico was referring to laches as a defense to equitable relief only. And in any event, an inference that Congress departed from a common-law principle could not properly rest entirely on a statement made two years after the enactment of the Patent Act by one person who, though central to its drafting, was not a member of Congress voting on the measure.[3]
In Petrella, the Supreme Court was presented with a similarly vague reference to “laches” in Federal Rule of Civil Procedure 8(c), which lists the affirmative defenses available in a civil action. See 134 S.Ct. at 1974-75. In light of the statute of limitations and the traditional role of lach-es, however, the Supreme Court found that this reference does not establish laches as a defense to damages claims. Id. So too here. Mr. Federico’s lone post-hoc reference to laches is entirely insufficient as a matter of statutory construction to conclude that Congress intended to incorporate laches as a defense to claims for legal damages, particularly in light of the contrary and clear language of § 286.
B
To find that Congress intended to codify laches as a defense to claims for legal damages, the majority relies on the canon of statutory interpretation that “[wjhen a statute covers an issue previously governed by the common law, we must pre *1338 sume that Congress intended to retain the substance of the common law.” Kirtsaeng v. John Wiley & Sons, Inc., — U.S. -, 133 S.Ct. 1351, 1363, 185 L.Ed.2d 392 (2013) (internal quotation marks omitted). But the presumption that Congress intended to retain an aspect of the common law only applies where the common-law principle is sufficiently “well established.” Astoria Fed. Sav. & Loan Ass’n v. Solimino, 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991); see also Isbrandtsen Co. v. Johnson, 343 U.S. 779, 783, 72 S.Ct. 1011, 96 L.Ed. 1294 (1952) (explaining that Congress is presumed to retain “long-established and familiar” common-law principles). If the case law on a particular issue is conflicting, we cannot infer from Congress’ silence which approach Congress intended to adopt. Cf. Metro. Stevedore Co. v. Rambo, 515 U.S. 291, 299, 115 S.Ct. 2144, 132 L.Ed.2d 226 (1995) (declining to infer ratification of judicial interpretation of a statute when these interpretations were largely dicta and “were not uniform in their approach”). Here, contrary to the majority’s narrow analysis of regional-circuit cases, the pre-1952 case law did not clearly establish that a plaintiffs laches may preclude recovery of legal damages.
1
Any analysis of what the common law was at a certain point in time must start with Supreme Court precedent. See, e.g., Astoria, 501 U.S. at 107-08, 111 S.Ct. 2166 (relying on Supreme Court precedent for common-law rules of collateral estoppel and res judicata). For even if there were differing views in the lower courts, it would be nearly impossible to conclude that there was a uniform understanding of the common law that was inconsistent with Supreme Court precedent. In our judicial system, the Supreme Court’s understanding is controlling.
Prior to 1952, the Supreme Court decided several cases holding that laches cannot bar a claim for legal relief filed within a statutory limitations period. See Holmberg, 327 U.S. at 395, 66 S.Ct. 582 (“If Congress explicitly puts a limit upon the time for enforcing a right which it created, there is an end of the matter. The Congressional statute of limitation is definitive.”); Mack, 295 U.S. at 489, 55 S.Ct. 813 (“Laches within the term of the statute of limitations is no defense at law.”); Cross v. Allen, 141 U.S. 528, 537, 12 S.Ct. 67, 35 L.Ed. 843 (1891) (“So long as the demands secured were not barred by the statute of limitations, there could be no laches in prosecuting a suit upon the mortgages to enforce those demands.”). Further, the Supreme Court made clear that laches is unavailable not only in an action at law, but also in a suit in equity to enjoin an action at law. See Wehrman v. Conklin, 155 U.S. 314, 326-27, 15 S.Ct. 129, 39 L.Ed. 167 (1894). The Supreme Court explained that a court of equity may enjoin an action at law only if the plaintiffs delay is accompanied by further conduct that meets the requirements for equitable es-toppel:
Though a good defense in equity, laches is no defense at law. If the plaintiff at law has brought his action within the period fixed by the statute of limitations, no court can deprive him of his right to proceed. If the statute limits him to 20 years, and he brings his action after the lapse of 19 years and 11 months, he is as much entitled, as [a] matter of law, to maintain it, as though he had brought it the day after his cause of action accrued, though such delay may properly be considered by the jury in connection with other facts tending to show an estoppel.
Id.; see also McClintock on Equity § 28, p. 75 (2d ed. 1948) (“The majority of the courts which have considered the question have refused to enjoin an action at law on *1339 the ground of the laches of the plaintiff at law.”). In sum, as' noted in Petrella, the Supreme Court has never “approved the application of laches to bar a claim for damages brought within the time allowed by a federal statute of limitations.” 134 S.Ct. at 1974.[4]
Moreover, several lower courts before 1952 likewise applied this general principle in patent-infringement cases to conclude that laches does not bar a claim for legal relief. In City of Concord v. Norton, 16 F. 477, 477 (C.C.D.Mass.1883), the plaintiffs filed a bill in equity to enjoin the defendant’s action at law based on laches. The court held that although equitable estoppel is available to bar a claim for legal relief, laches is not. Id. at 480. “[F]or laches the remedy at law is found in the statute of limitations, and if that statute is inadequate there is no other remedy.” Id. Similarly, in Thorpe v. Wm. Filene’s Sons Company, 40 F.2d 269, 269 (D.Mass.1930), the court recognized that laches “has no application to actions at law. A plaintiffs conduct may, however, have been of such character as ... to make it unconscionable for him to maintain it.- This is estoppel and is recognized in equity as sufficient ground for enjoining an action at law.”
These decisions alone defeat the conclusion that “courts consistently applied lach-es to preclude recovery of legal damages” prior to 1952. Maj. Op. at 1326. To say that a rule was “well established” when the Supreme Court clearly and repeatedly held otherwise is to give insufficient recognition to the hierarchy of federal courts. Further, laches is a general equitable defense, not a defense specific to patent infringement. For the purposes of a common-law incorporation theory, therefore, the role of laches in other areas of civil litigation is of a piece with the role of laches in patent cases.[5] We cannot assume that Congress would have ignored Supreme Court precedent on the issue and focused solely on regional-circuit decisions in patent cases.
2
Even if we could focus solely on regional-circuit law, the cases cited by the majority do not themselves show that there was a uniformly well-established rule that lach-es is available to bar legal damages otherwise permitted by § 286. Nearly all of these decisions either apply laches under a misinterpretation § 274(b) of the Judicial Code, mention laches in dicta, or apply laches to bar a claim brought in equity. The discussion of laches in these cases does not clearly demonstrate that in 1952 laches was available to bar a claim for legal damages in a civil action.
*1340 The majority primarily relies on two cases that address the availability of equitable relief under § 274(b) of the Judicial Code. See Ford v. Huff, 296 F. 652 (5th Cir.1924); Banker v. Ford Motor Co., 69 F.2d 665 (3d Cir.1934). Section 274(b) stated that “in all actions at law equitable defenses may be interposed by answer, plea, or replication without the necessity of filing a bill on the equity side of the court.” Act of March 3, 1915, ch. 90, § 274(b), 38 Stat. 956 (1915). As the court in Ford recognized, however, § 274(b) simply eliminated procedural barriers to requesting equitable relief in actions at law — obviating the need to file separately in a court of equity — but did not change the substantive and remedial principles of law and equity. See 296 F. at 658 (finding that under § 274(b), “a defendant in an action at law who files a plea setting up an equitable defense is given the same rights as if he had set them up in a bill in equity”). The Supreme Court subsequently confirmed that “the procedure was simplified, but the substance of the authorized intervention of equity was not altered.” Enelow v. N.Y. Life Ins. Co., 293 U.S. 379, 382, 55 S.Ct. 310, 79 L.Ed. 440 (1935); cf. Stainback v. Mo Hock Ke Lok Po, 336 U.S. 368, 383 n. 26, 69 S.Ct. 606, 93 L.Ed. 741 (1949) (“Notwithstanding the fusion of law and equity by [Fed.R.Civ.P. 2], the substantive principles of Courts of Chancery remain unaffected.”). And under Supreme Court precedent, it was a substantive principle of law and equity that laches alone was not a sufficient basis for a court of equity to enjoin an action at law. See Wehrman, 155 U.S. at 326-27, 15 S.Ct. 129. Section 274(b) therefore does not authorize courts to bar a claim for damages in an action at law based on a defense of laches.
The holding in Ford is consistent with this understanding of § 274(b). The court found that the plaintiffs claim was barred under a theory of equitable estoppel, which is an appropriate ground for enjoining an action at law for damages. See Dickerson v. Colgrove, 100 U.S. 578, 582-83, 10 Otto 578, 25 L.Ed. 618 (1879). Equitable estop-pel requires a showing that the defendant relied on a misleading communication by the plaintiff that is inconsistent with his present claim. See A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1041 (Fed.Cir.1992) (en banc). The plaintiff in Ford had accepted payment “under circumstances calculated to lead defendant to believe or understand that such payment was accepted by plaintiff in full satisfaction and discharge of all claims by him.” 296 F. at 657. Noting that “[t]he effect of one being estopped to enforce a claim is that his plight is substantially the same as it would have been if the claim had never existed,” the court held that the plaintiffs action at law was barred. Id. at 657-58. The disposition in Ford thus rested on a theory of equitable estoppel, consistent with substantive equitable principles and § 274(b). See Thorpe, 40 F.2d at 270 (finding that in Ford, “while the word ‘laches’ is used, the decision clearly rested upon the ground of estoppel”). Any mention of laches was mere dictum, and certainly cannot be read to contradict Supreme Court precedent holding that laches does not bar a claim for damages in an action at law. See Jama v. Immigration & Customs Enf't, 543 U.S. 335, 351 n. 12, 125 S.Ct. 694, 160 L.Ed.2d 708 (2005) (“Dictum settles nothing, even in the court that utters it.”).
The Third Circuit in Banker, however, took Ford beyond its holding and applied laches in an action at law based on a misinterpretation of § 274(b). Although the court cited Ford for its interpretation of § 274(b), the court went further and held that this provision “authorizes equitable defenses in actions at law theretofore applicable only in equity.” Banker, 69 *1341 F.2d at 666. The Third Circuit found that “[had] the appellant’s suit been in equity, the evidence would have been ample for holding that recovery was barred because of laches.” Id. For support, the Third Circuit relied on cases in which courts of equity applied laches to preclude a claim for an injunction and an accounting. Id. But it does not follow from these cases in equity that laches may also be grounds for enjoining a claim to legal damages in an action at law. Moreover, by 1952, the Supreme Court had established that laches cannot be invoked for this purpose, see Wehrman, 155 U.S. at 326-27, 15 S.Ct. 129, and that § 274(b) does not change substantive principles of law and equity, see Enelow, 293 U.S. at 382, 55 S.Ct. 310. In light of the Third Circuit’s flawed analysis, as highlighted by Supreme Court decisions, Banker does not support a well-established rule in 1952 that laches may preclude a claim for legal damages in patent-infringement cases, notwithstanding the statutory limitations period. Neither do the cases relying on Banker without discussion. See, e.g, Universal Coin Lock Co. v. Am. Sanitary Lock Co., 104 F.2d 781, 781 (7th Cir.1939).
Several other cases cited by the majority involve courts of equity barring a plaintiffs suit due to laches. In one of these cases, the precluded relief included damages. See George J. Meyer Mfg. Co. v. Miller Mfg. Co., 24 F.2d 505 (7th Cir.1928). Others applied laches to bar a request for an “accounting,” which we have said was sometimes — but only sometimes — used to refer to damages. See, e.g., Wolf, Sayer & Heller v. U.S. Slicing Mach. Co., 261 F. 195 (7th Cir.1919); Hartford-Empire Co. v. Swindell Bros., 96 F.2d 227 (4th Cir.1938); Union Shipbuilding Co. v. Boston Iron & Metal Co., 93 F.2d 781 (4th Cir.1938); France Mfg. Co. v. Jefferson Elec. Co., 106 F.2d 605 (6th Cir.1939); Gillons v. Shell Co. of Cal., 86 F.2d 600 (9th Cir. 1936); Window Glass Mach. Co. v. Pittsburgh Plate Glass Co., 284 F. 645 (3d Cir.1922); A.R. Mosler & Co. v. Lurie, 209 F. 364 (2d Cir.1913).
These cases do not support the conclusion that laches was well understood to bar legal damages in 1952. Courts of equity had discretion to dismiss a claim on equitable grounds such as laches or unclean hands. Because the patent statute required courts of equity to award damages upon a finding of infringement, see Patent Act of 1870, ch. 230, § 55,16 Stat. 198, 206 (1870), the court’s equitable discretion to reject a patent-infringement claim allowed it to bar legal damages in that equity court. But a plaintiff also had the option to seek damages in a court of law. And it was well established that, although a court of equity could refuse to grant damages itself, it could not enjoin a court of law from doing so. See, e.g., Wehrman, 155 U.S. at 326-27, 15 S.Ct. 129. Thus, laches could only bar a plaintiff from recovering damages in a particular forum. It was not sufficient to deny a remedy altogether.
That principle necessarily endures after the merger of law and equity. See Stainback, 336 U.S. at 383, 69 S.Ct. 606. In the post-merger system, therefore, prior case law applying laches to bar damages in a court of equity does not suddenly extend to all claims for damages. Plaintiffs are still entitled to damages that would have been available in a court of law, to which laches was no defense.
The majority’s remaining support is minimal. See, e.g., Brennan v. Hawley Prods. Co., 182 F.2d 945, 948-49 (7th Cir.1950) (applying laches to bar all relief without mention of the statutory limitations period, citing Universal Coin Lock, 104 F.2d at 781, and eases applying laches to bar relief in a court of equity). Particularly in light of the Supreme Court’s re *1342 peated holding that laches cannot preclude a claim for legal damages governed by a statutory limitations period, these outliers are not sufficient to show a clear or well-established common-law rule to the contrary. To the extent that Congress codified laches, therefore, it was as a defense to equitable relief only, not as a defense to legal relief otherwise permitted under § 286.
C
The majority’s policy concerns do not alter this conclusion. The majority argues that, because a copyright holder must prove a defendant’s access to a work to establish infringement, potential defendants are more likely to know they are at risk of being sued. See Maj. Op. at 1330. But innocence is no defense to direct patent infringement, and thus a defendant is less likely to be aware of its potential liability for infringement. See id. at 1330. The majority argues that a defense of laches is therefore more useful to defendants in patent-infringement suits. See id. at 1330.
The Supreme Court’s decision in Petrel-la did not depend on policies specific to copyright law. It turned on the conflict between laches and a statutory limitations period, and the longstanding principle that laches cannot bar a claim for legal relief. See 134 S.Ct. at 1967, 1973-74. That innocence is not a defense to direct patent infringement does not make this reasoning any less applicable.
In any event, the majority’s policy concerns are not the only consequences at stake. Patent owners often have good reason for delaying suit. As the Seventh Circuit observed:
Frequently the position of the patentee (financial and otherwise) prevents the institution of suits. The patent litigation is often prolonged and expensive. Moreover from the very nature of the thing he cannot be fully cognizant of all infringements that occur throughout the length and breadth of this country.... Then, also, the validity of his patent and the infringement thereof may be, as here, disputed. These defenses present mixed questions of fact and law concerning which there is necessarily some doubt and uncertainty.
George J. Meyer Mfg. Co., 24 F.2d at 507. Resolving these competing policy concerns is precisely the type of judgment left for Congress. Congress was well-aware of the nature of patent infringement in 1952, and it must be presumed that Congress took these concerns into account when it established the six-year limitations period for bringing a claim for damages. We should not undermine Congress’ judgment in 1952 according to our own assessment of the current policy landscape.
Ill
The Supreme Court in Petrella reiterated the principle that laches does not apply to claims for legal relief governed by a statutory limitations period. The evidence of congressional intent and the pre-1952 case law is insufficient to justify departing from this principle in patent-infringement cases. Following the Supreme Court’s longstanding precedent, I read § 286 to express Congress’ exclusive judgment on the timeliness of a claim for damages. Laches is not available as a further defense. Accordingly, I respectfully dissent-in-part.

. I agree with the majority that laches is available to bar equitable relief. I therefore join Part III of the majority opinion.

. Section 286 and its predecessor contain virtually identical language. Compare 35 U.S.C. § 286 ("[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.”), with Rev. Stat. § 4921 (1897) ("But in any suit or action brought for the infringement of any patent there shall be no recovery of profits or damages for any infringement committed more than six years before the filing of the bill of complaint or the issuing of the writ in such suit or action....").

. The Supreme Court has found that a post-hoc statement, even from members of Congress, "does not qualify as legislative ‘history,’ ... [and] is consequently of scant or no value” for statutory interpretation. Graham Cty. Soil & Water Conservation Dist. v. U.S. ex. rel. Wilson, 559 U.S. 280, 298, 130 S.Ct. 1396, 176 L.Ed.2d 225 (2010) (discrediting a letter from the primary sponsors of the bill in Congress); see also Consumer Prod. Safety Comm’n v. GTE Sylvania, Inc., 447 U.S. 102, 117-18, 120, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980).

. The majority implies that the Supreme Court’s decision in Lane & Bodley Co. v. Locke, 150 U.S. 193, 14 S.Ct. 78, 37 L.Ed. 1049 (1893), is to the contrary. See Maj. Op. at 1328. In that case, the Supreme Court found that laches barred a claim brought in equity. Lane & Bodley, 150 U.S. at 201, 14 S.Ct. 78. As the majority notes, the Supreme Court does not say whether the monetary relief barred by laches was legal or equitable in nature. And the Supreme Court decided Lane & Bodley before the statutory limitations period for damages claims was enacted. It therefore does not say anything about whether laches may bar a claim for legal damages governed by a statute of limitations.

. The majority argues that a Senate floor statement claiming that the Patent Act "codi-fie[d] the present patent laws,” 98 Cong. Rec. 9323, justifies its narrow focus on the role of laches in patent cases only. See Maj. Op. at 1329. But unlike the doctrine of contributory infringement, a judicial doctrine expressly incorporated into the Patent Act of 1952, laches is not a patent law specific to patent cases. It is a general equitable defense to liability. Congress' codification of “patent laws” therefore does not support an assumption that Congress only looked to the application lach-es in patent cases, and not to fundamental equitable principles announced by the Supreme Court.